Case number 4-16-0280. Appearing for the appellant is attorney Roxanna Mason and for the appellee is attorney Rosario Escalera. Good morning. Ms. Mason are you ready to proceed? Yes. You may. May it please the court. Because the state appears to be in agreement with us regarding the second issue raised in the brief, my intention today is to spend our time together discussing the first issue. The trial court's decision to not appoint counsel to investigate and to litigate Mr. Rogers' claim of ineffective assistance of trial counsel. In this case, Mr. Rogers did precisely what a defendant is supposed to do when he believes he's received ineffective assistance of trial counsel. After his trial, before he was even sentenced, before he knew what sentence he would receive, he brought the matter before the trial court's attention. And to the trial court's credit, it did a proper crinkle inquiry that gave us the detailed facts to decide this issue. However, the trial court's mistake came when it made the determination not to appoint counsel for Mr. Rogers. And its decision to not appoint counsel constituted manifest error. Mr. Rogers' claim was pretty simple. It was that one of the key pieces of evidence against him, this overhear recording of one of the alleged drug transactions, was completely unknown to him until he showed up to trial and learned about it at trial at the same time the court did. Now, trial counsel never contested this allegation. She never claimed that she herself had played the tape for him or described the recording to him. Instead, she said that in order to save time, she had asked her intern to play the recording for him. Now, this intern, it's unclear whether the intern was in court. It appears probably not. But we have absolutely no testimony whatsoever from the intern, no statements from the intern, no statements from trial counsel saying, after the intern went over there, I talked to him and he said that he played everything for Mr. Rogers and this is what they talked about next. We have absolutely nothing on the record about that. Yet the trial court determined that there was enough evidence on the record somehow in order to refute Mr. Rogers' allegations and determine that they were merely spurious and could be disregarded without further investigation. This is a problem. There's very little case law out there regarding these issues. One of the very few cases on it is from the 3rd District last year, People v. Murray, where the 3rd District noted that there's almost no case law out there defining the boundaries of the possible neglect standard that's supposed to apply in these cases. In Murray, the court determined that there was possible neglect because it was a pretty obvious case. Here, I think that's what we have as well. Mr. Rogers' main claim is that if he had known about this piece of evidence, that he never would have gone to trial and that he would have accepted the offer of 10 years that was given by the state. This makes sense in light of the testimony that was provided by trial counsel during the Crankle inquiry. She said that her defense strategy was ultimately to try to convince Mr. Rogers to plead guilty and that that would have been in his best interest. But in this universe where we take his allegations as true and he did not know about this key piece of evidence that the trial court ultimately relied upon in finding him guilty, he didn't realize how strong the state's case was against him. He had no way of knowing. All he believed there to be was the word of a confidential informant who was incredibly incredible. Even the trial court noted how incredible most of her testimony was and said that if the state's case was merely her word, that the outcome would have been different. There was that and there was the fact that he had some of the buy money on him when he was ultimately arrested. Now, the trial court talked about how the buy money was part of why it ultimately convicted Mr. Rogers, but then went on to say that it was the buy money in conjunction with this reporting that existed of him threatening the confidential informant, of him talking about how she had to do something in front of him, which corroborated her testimony about how he had asked her to shoot the heroine in front of him before he would allow her to leave. In light of this critical piece of evidence that Mr. Rogers did not know about, his case could have gone either way. If that reporting hadn't been in existence, a reasonable trier of fact could have convicted him based on the word of the confidential informant if they found her more credible than the trial court ultimately did. That combined with the buy money, it's a sufficient case, but it's certainly not a slam dunk case. Let me ask you a question. As I understand it, Attorney Patton asserted that while she did not use the word audio, she said there was an overhear and that there was a tape of a confidential source of the buy from the day in question. She asserts that she discussed that with him. That's not quite correct. She says that she discussed the police reports, including the request for an overhear with them, and that she discussed a tape of the confidential informant from the day of the buy with him. And there are two recordings in this case. Neither one of them is a tape. They're both electronic recordings. One of them. Yeah. Exactly. Exactly. There are certain of us that still refer to tapes. Oh, yes. When I hear tape, I think of like a VHS tape. We don't have anything that was obviously a VHS tape or an audio cassette to be able to distinguish them that way, what she's talking about when she says tape. We just know that it's one of the electronic recordings. And there were two in this case. Both of them are of the confidential informant from the day of the buy. One of them is of the confidential informant having this audio conversation with Mr. Rogers, and the other one is of the confidential informant walking up to the defendant's apartment, walking into the apartment, a few other people walking in and out, and then her walking out. And Mr. Rogers says that the intern did play that tape of the confidential informant for him when the intern came to visit him. So counsel telling him, well, they've got this tape of the confidential informant from the day of the buy. If the only tape that was ever played for him was the one that is of the confidential informant from the day of the buy, that's not particularly incriminating. That doesn't establish that when she was in the house that he sold her drugs, as she claims. It just establishes that, yeah, roughly around that time she was there. So if that's all he knew about in his conversations with the attorney. That doesn't sound like overwhelming evidence. Exactly. But she told the court that on two occasions at least, she personally indicated to the defendant that the evidence was overwhelming. So why would she make that assertion based on the underwhelming evidence that you just described? It doesn't seem to me that the trial court would have to assume that she didn't discuss the overhear with the defendant when she described her conversations with the defendant as conveying the overwhelming nature of the evidence against him. And that she brought the public defender to meet with him as well, who also described the overwhelming nature of the evidence against him. Is that right? Well, that perfectly describes the conflict between Mr. Rogers and his counsel. As far as counsel knew, yes, the evidence was overwhelming because counsel was well aware of this audio recording. And absolutely, she probably went over there, just as she said, and told him, they've got this recording of the confidential informant during the buy. This is overwhelming evidence, sir. You really need to take this deal. But Mr. Rogers, who was only shown the recordings by an intern, doesn't have that piece of information that tells her. You're assuming that Ms. Patton did not discuss the nature of the audio with the defendant. And why do you assume that? She never said that she did. Well, she said, we discussed the evidence on several occasions. The audio most certainly would be part of the evidence. The trial judge explicitly asked her, did you discuss the audio recording with him? And she said, Judge, I never used the word audio. And that's the critical thing here. I don't think that counsel was intentionally trying to confuse Mr. Rogers or mislead him about the evidence against him. I think that counsel knew that the evidence was overwhelming and wanted Mr. Rogers to plead guilty. But because of what happened with the intern, she didn't know that Mr. Rogers didn't have all the information. And because she didn't make sure that Mr. Rogers knew that there were, in fact, two recordings, not one recording, that's where the problem comes into play. There was a transcript of the audio, right? Yes. And did the defendant know about the transcript of the audio prior to the plea? Not before trial. The trial counsel states on the record that she did not receive the transcript until they appeared for trial. Okay. And is that insufficient? I mean, he's not saying that he didn't have it prior to the start of the trial. Are you saying that the plea offer was withdrawn at that point? The record's a little unclear on exactly when the transcript was turned over. They put the existence of the plea offer on the record before the trial began. And the state said at that time, you know, now that we're starting trial, this is withdrawn. It's unclear whether the transcript was turned over after that record was made or before that record was made. We only know that it was turned over the day of trial. And another important thing, when we look at the trial attorney's comments during the Frankl inquiry, she says that she talked to a defendant about how there is a recording of the confidential informant on the day of the buy. There are actually two. And her failure to make it clear to Mr. Rogers that there were two recordings and that one of them had incredibly damaging audio portions that were enough to change his case from a could-go-either-way situation to a slam dunk for the state. That's ineffective assistance of counsel. And we don't know exactly what went on with the intern. We're not asking that Mr. Rogers' conviction be overturned and that he get a new trial. We're simply asking that we go back to have an evidentiary hearing on this matter so that counsel can be appointed, investigate this intern, and find out what the intern has to say about this. If the intern comes into court and says, no, Judge, I played both those tapes for him and talked to him about him after the fact. I'm sorry. I'm sorry. Oh, no. I interrupted. Regardless of what the intern might have to testify to, this trial counsel has testified that she reviewed all of the records, all the discovery, all the police reports, wherein it would be memorialized that there were these audio and video recordings. And so we have a statement from the Office of the Court that this was done and with no further inquiry. So if we have that statement from trial counsel who, you've argued, her ultimate goal is to obtain and negotiate this position because it's best in her client's favor, doesn't it make sense that the attorney would have gone through all of the records with the defendant? I mean, it would certainly make sense for counsel to do so. However, if counsel admitted that when she reviewed the records. Thank you for that. So the ultimate issue for us to consider is we have the statement that the counsel has not used the word audio. So we have to cipher and try to determine what went into counsel preparing the defendant for trial and what reviewing the reports means. Is that sort of the rub? I mean, we certainly have the fact that she said that she reviewed the reports with him, that she went over evidence with him. But then we have a very specific comment from her regarding the recordings and her statement that because of the issue of her time, she left that to an intern to play those recordings for him. We have a very specific statement of that. So since we don't know anything about what went on between the intern and Mr. Rogers, other than Mr. Rogers saying, intern didn't play that particular recording for me, we can't really make that presumption. But the thing is, counsel didn't answer the court's question, didn't elaborate. Counsel says, I didn't use the word audio and left it at that. So we're left to decipher just what counsel did do in preparing for trial and in disclosing the discovery information to the defendant. There's a hole there. Yes. I mean, we certainly are, the court is in the position of trying to decipher exactly what counsel did. But in doing that, we do have the additional information about counsel saying that regarding these recordings, she did not play the recordings for him. We know that much. We know that she left the playing of the recordings to the intern. She was very clear about that aspect of it. So with regards to that, there's not really much guesswork or, you know, trying to figure things out that this court has to do with regards to whether she plays the recordings for him or not. She also never said that, you know, when given the opportunity to answer questions about the audio recordings, she never claimed, no, Judge, I didn't play it for him, but I talked to him about it at length when we sat down with my supervisor. There's nothing like that when she was given the opportunity to defend her representation. And given this situation where the standard is merely that there's the possibility that Mr. Rogers was neglected, then the appropriate thing to do is to appoint counsel to investigate this further. Interview the attorney. Ask those pointed questions of the attorney. You know, you say that you talked about reports. You say that you talked about evidence. What does that mean? And really nail that attorney down in a cross-examination format so that this court can ultimately be provided with an adequate record to decide whether there was an effect. Let me put the question another way. Your client told the court that counsel stated there was no audio, just a video. The trial court, after hearing Ms. Patton, could legitimately conclude that no such positive statement was made. Thus, defendant either misunderstood or was obfuscated. Similarly, he asserted, she only told me about the marked money. Yet later, that was changed to, well, yeah, there was more. And Ms. Patton elaborated quite a bit more. Again, conceding that the word audio was never used. Wasn't the trial court entitled to believe that everything was adequately discussed? Even though there might be a question about that audio having been played. No. No, because with respect to that one particular issue, the key issue, whether the audio was played or not, there's no dispute between counsel and between Mr. Rogers. There's no way that the court could say, oh, well, the trial counsel is more credible on this particular issue than Mr. Rogers is because trial counsel made no representations about that key issue. Now, there were some other... Yeah, but he's saying, she specifically told me there was no audio, just a video. And that the trial court could believe that positive assertion and thereby begin to question the defendant's assertions about what did or did not happen, what was or was not discussed. Well, and ultimately, if this were a case where there were an evidentiary hearing where credibility determinations came into play, yes, ultimately the trial judge could decide that, well, because Mr. Rogers has facilitated a little bit, I don't find him credible. That would be totally fine, but we're not there yet. We're only at this very initial stage where... At this very initial stage, the trial judge is supposed to conduct the crankle hearing and decide, is there any merit to this? Well, he's supposed to decide, is there a possibility of neglect on one hand, versus on the other hand, according to People v. Ramey, the claims are spurious or were related to trial tactics or are refuted by the record, and here... What's the standard of review when it comes to the trial court's credibility determinations? Because the trial court does have to make credibility determinations of some sort, it seems here, and did. Didn't find the defendant credible in his assertions, or are you saying that we have to take what the defendant says at face value and no deference is given to the trial judge? To answer the first part of your question, generally in these proceedings, the standard of review is a manifest error standard. However, there's not a credibility determination that had to be made regarding the key issue at this point, because trial counsel did not offer some conflicting point of view on the matter. If Mr. Rogers had said, she never played this tape for me, and trial counsel had gotten up and said, no judge, I have it right here in my notes on March 13th, I went over to the jail and I played this recording for him, the court could look at all of the surrounding circumstances, what he observed at trial, and decide, yes, I find that trial counsel is more credible, this is a spurious claim, I'm not going to appoint counsel. But because in this case, trial counsel did not refute Mr. Rogers' claim that she had never played the tape for him, and that the defense team had never played the tape for him, there's not a credibility contest that the judge can decide. And they'd be mistaking this case for another, and it sure wouldn't be the first time. But didn't the trial judge here find defendant's assertion to not be credible? He didn't explicitly say that it was not credible. The trial court said, I have a hard time believing this. And saying that he has a hard time believing that this would happen, but that, when we get back to the manifest error standard, we have to look at the evidence that the court had before it. And this isn't some wild claim. Mr. Rogers isn't saying that the trial counsel conspired with the state against him to try to get him to plead guilty. This is a simple claim where what probably happened was trial counsel asked the intern to do something to save time, and the intern made a mistake, and only played one video, or played the wrong video. Trial counsel made a representation to the court that there were other uncharged cases that they had knowledge of at the same time. Maybe the intern played a tape from one of those. We simply don't know. We don't know if this was a Rule 711 intern, or just some first-year law student, or maybe even a college student who was helping out. Ms. Mason, I'm sorry, you're out of time. You'll have time, and we're both. All right. Thank you. Thank you. Mr. Escalero. May it please the Court, Counsel. Good morning, Your Honors. I am Rolando Escalero, and I represent the City of Illinois. Your Honors, there is no doubt that the State's Exhibit 7 was the linchpin that secured the defendant's conviction. If trial counsel did not discuss this crucial evidence with the defendant, then it's possible that trial counsel neglected his case. But the defendant's claims do not miss the mark. Because either there is no merit to the claim, because there's no factual basis, or at least in the second, there is conflicting evidence or statements between counsel and the defendant. Now, there's no doubt there's two pieces of evidence, or two recordings in this case. There's State's Exhibit 7 and State's Exhibit 4. Now, trial counsel specifically stated she observed the videos, more than one video, with the defendant. Now, before trial counsel, or after the defendant spoke, trial counsel made a very large statement. And then I'm going to quote it real quick. To assert that it's the State's contention that even though she used the claim audio, before she even used that claim, she actually stated that the recording was a video. Now, and I quote, I believe, Mr. Rogers, the one thing that did come up on the day of the trial was the actual transcript over here. That was given to me on the day of the trial, and that was shown to Mr. Rogers on that day. And that was the day I received it as well. But the actual video was in evidence the entire time. So when she said, while she later said audio, she was actually saying it was a video. And if she talked about both videos, then that was included because there's only two recordings in this case. So that basically refutes defendant's claims that she did not talk to trial counsel about these videos. And since there's no merit, since there's no factual basis to defendant's claims, then there's no merit. And that's basically from people versus more. If there's no merit to a case, then there's no need to appoint counsel. And then I guess talking about there's conflicting evidence, yes, the defendant did say she didn't talk about this case in general or talk about the evidence in general. But she specifically stated, even though she didn't use the word audio, she stated several times, as your honors have alluded, that we discussed the evidence on several occasions. We talked about the videos in general. She didn't use the word term, or she didn't remember using the term audio, but there were videos of the CS that you saw in court and over here that was played in the court as well. So I think these are conflicting statements, and because they're conflicting statements, the trial court did not need to appoint counsel. And I guess I have, if there are no further questions, I believe the, I think the statements basically conflict with the defense contentions. If there's no further questions, I would ask this Court to refer. All right. Thank you. Ms. Mason. May it please the Court? Briefly, I just want to touch on something counsel just said. He talked about how counsel said that she reviewed videos with him, and that means she must have been talking about both the video recording and the audio recording. But that's not actually the case. If we look at what counsel said in Volume 11, page 10 of the record, what counsel said was, Judge, we talked about videos in general. I don't remember using the term audio. We talked about videos that were involved. Both, there were videos of the CS that were uncharged. So when she's talking about videos, she's talking about the video in this case and the other videos in those other uncharged cases. That's as opposed to the audio recording. And what we have here is a record where Mr. Rogers said, no one played this audio recording for me. And counsel didn't come in and say, yes, we did. Counsel came in and said, well, Your Honor, I asked an intern to do that. What if the audio recording was not played for the defendant, but that counsel and or the intern had gone through what the contents of the audio was? I know they didn't read a transcript. They didn't have it then. But what if that was done? That's a little bit more unclear. Under People v. Davison, this Court held that the defendant is not entitled to copies of all of his discovery in every case or copies of every video in every case. However, they are entitled to the information that is necessary for them to make informed decisions about their case, like whether or not to plead guilty, whether to go to trial, whether to testify, those key decisions. If counsel had sat down and gone through it in detail and said, you know, and then you say this on the video and then you say that on the video and had given a really clear picture of exactly what happened on the video, or I'm sorry, on the audio, that may have been sufficient. But notably, counsel never claimed that she did that. When pressed on whether she told the defendant about the audio recording, played the defendant the audio recording, she said, well, I never said the word audio. Let me ask you a question about that. Could you use a nice term there, a segue, and that's pressed. When a court is asking pointed questions of counsel in something like a crankle hearing, is there not a distinction of counsel refuting a point or counsel advising the court, I have no clear memory of saying the word audio, but what I can tell you is these affirmative facts. I know from my experience that I talked to the defendant and went through these portions of discovery. I know that happened, I did that, and then I have a recollection of this case. But to refute a point to the court in answering the court's question is so affirmative, you know, counsel is going to be very careful there. Isn't there a distinction? I mean, I can see there is a distinction. If counsel here had said, you know, I never said the word audio, but I told him that there was a recording of what he said, then we would have a different situation here. But isn't there evidence that counsel said, I reviewed the discovery with the defendant and encouraged the defendant to take the plea of guilty because of the overwhelming evidence, and isn't that enough for us to consider? I agree with the first part of what your Honor said. There is evidence of that, but I disagree with the second part. That's not enough because of what else counsel said about the audio recordings and the fact that she left that to the intern. Without more knowledge of what the intern, what happened in that meeting with the intern, it was premature for the court to disregard Mr. Rogers' claim, and therefore counsel should be appointed, an evidentiary hearing should be held, and we should go from there. If there are no further questions. Thank you. Thank you both. Case will be taken under advisement in a written decision. Congratulations.